Byron G. Martin (#8824)
Axel Trumbo (#14816)
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, Utah 84111
Telephone:   (801) 532-7080
Facsimile:    (801) 596-1508
bmartin@strongandhanni.com
atrumbo@strongandhanni.com

*Attorneys for Plaintiff Philadelphia Indemnity Insurance Company*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania corporation, <br><br> Plaintiff, <br><br> vs. <br><br> MISSION 1160 GSM, LLC, a limited liability company; AMBER VIEW RENTAL SPE, LLC, a limited liability company; 2 FB, INC. aka 2FB, INC FRIEDKIN INVESTMENT, a California corporation; W.P.A. ASSOCIATES, a Utah Limited Liability Company; <br><br> Defendants. | **COMPLAINT FOR DECLARATORY RELIEF** <br><br><br> Civil No. 2:19-cv-00893-HCN <br><br> Judge Howard C. Nielson, Jr. |

Plaintiff Philadelphia Indemnity Insurance Company complains and alleges against Defendants as follows:

**PARTIES**

1. Philadelphia Indemnity Insurance Company ("Philadelphia") is a Pennsylvania corporation authorized to do business as an insurer in the State of Utah.

2. Defendant Mission 1160 GSM LLC ("Mission") is a California limited liability company registered to do and doing business in Salt Lake County, State of Utah, and owning and operating real property therein.

3. Defendant Amber View Rental SPE, LLC ("Amber") is a California limited liability company registered to do and doing business in Salt Lake County, State of Utah, and owning and operating real property therein.

4. Upon information and belief, Defendant "W.P.A. Associates, a Utah Limited Liability Company" ("WPA") is a Utah limited liability company and/or dba currently doing business in affiliation with the co-defendants in Salt Lake County, State of Utah.

5. Defendant 2 FB Inc., sometimes known as 2FB, Inc Friedkin Investment ("2FB"), is a California corporate entity that upon information and belief owns, and/or affiliates with co-defendants with respect to their business operations and holdings in Utah.

## JURISDICTION AND VENUE

6. Venue is proper in this court, including pursuant to 28 U.S.C. § 1391.

7. Philadelphia seeks the relief stated in this Complaint, including a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201.

8. This Court has subject-matter jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity of citizenship (or further discovery is likely to show complete diversity) between Philadelphia and all defendants and because the amount in controversy, excluding interest and costs, exceeds $75,000.

9. Plaintiff Philadelphia is a citizen of and domiciled in Pennsylvania only because it is incorporated under the laws of the state of Pennsylvania and has its only principal place of business there. It is not a citizen of Utah or California.

10. Defendant 2FB is a citizen of and domiciled in California because it is incorporated under the laws of the state of California and has its principal place of business there. It is not a citizen of Pennsylvania.

11. After a reasonable opportunity for discovery, there will likely be evidentiary support for the assertion that Defendants Mission, Amber, and WPA – and their various members - are all citizens of states other than Pennsylvania. All their members are likely to be determined to be California and/or Utah citizens, and/or at a minimum not citizens of Pennsylvania, after further limited jurisdictional discovery is conducted; and therefore, no defendant will be a citizen of the same state as Philadelphia in that event.

12. The matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, because this is an insurance coverage matter related to fire damages to real property in Utah in which the sum of $100,000 in insurance proceeds is in dispute.

13. As set forth in more detail below, there is an actual and justiciable controversy between the parties with regard to insurance coverage under an insurance policy issued by Philadelphia.

## GENERAL ALLEGATIONS

14. Mission and Amber own as tenants in common an apartment complex property located at 2184 W 3100 S in West Valley City, Utah, known as West Point or the Apartments at Decker Lane ("West Point").

15. Upon information and belief, WPA is a property management entity, dba, or other affiliate of Mission and Amber, or of their affiliates, which acts on behalf of Mission and Amber in the operation and the insuring of West Point.

16. Upon information and belief, 2FB is a parent company or other affiliate of Mission and Amber, acting on behalf of them in certain operations of and the insuring of West Point.

17. For the time in question, West Point and its owners are insured under Philadelphia policy PHPK1829113 for certain first-party property losses ("Philadelphia Policy").

18. For the time in question, West Point and its owners are likewise insured against certain first-party property losses under a second source of first-party property insurance provided by Hudson Specialty Insurance Company ("Hudson") under master policy HCS102638 RLL 19-1408, and which is referred to as so-called "Renters Legal Liability" insurance ("RLL Policy").

19. On or about April 1, 2019, a fire started at West Point that led to damage in multiple apartments and buildings at West Point.

20. Property loss claims arising from the fire have been submitted to Philadelphia, and more claims are expected.

21. Philadelphia has paid to or for the benefit of the West Point owners insurance proceeds for fire loss claims that have been submitted to Philadelphia.

22. Philadelphia is informed that on June 13, 2019, "Mission 1100 [sic] GSM LLC" was paid $100,000 under the RLL Policy on account of the owners' interest in and losses on the West Point property.

23. The correspondence accompanying the RLL Policy payment noted: "In full settlement and satisfaction for all loss and damage as a result of fire damage which occurred on or about 4/l/2019" and noted further, "Renters Legal Liability is hereby discharged and forever released from any and all further claims, demands or liability under the policy as a result of the loss and damage indicated."

24. The correspondence accompanying the RLL Policy payment further noted the location as "Unit 5 and others." Unit 5 is where investigators believe the fire originated.

25. The deductible charged on the RLL payment was $0.00, based on the "deductible being applied against excess loss over policy limit."

26. The RLL payment covered the same ownership interest and first-party losses resulting from the fire (including building damage) as Philadelphia has already paid, and/or as Philadelphia otherwise would be required to pay going forward, but for the RLL Policy.

27. According to the language of the two policies noted above, Philadelphia believes that the RLL payment should credit or offset Philadelphia's obligations under the Philadelphia Policy, thus reducing the amount that Philadelphia must pay on West Point damage claims and/or requiring reimbursement to Philadelphia in the amount of the RLL payment.

28. Defendants disagree with Philadelphia's view, and believe Philadelphia should continue to pay all claims without any offset, credit, or reimbursement, despite the RLL payment.

29. Therefore, an actual controversy has arisen with respect to Philadelphia's and Defendants' rights and obligations going forward under the Philadelphia Policy, which should be settled and determined by this court through declaratory judgment.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment)

30. Philadelphia incorporates the other allegations of the Complaint as though fully set forth herein.

31. The Philadelphia Policy is an enforceable agreement that binds Philadelphia and Defendants to the terms and conditions set forth therein, which Philadelphia has complied with.

32. The Philadelphia Policy contains the following clause with respect to how to adjust claims in the event that other insurance covers the same loss:

> **G. OTHER INSURANCE**
> 1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.
> 2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

33. The "Other Insurance" clause in the Philadelphia Policy is then modified by the following additional language:

> C. Other Insurance
> 1. Paragraph G.2. Other Insurance in the Commercial Property Conditions;
> 2. Paragraph H.8.b. Other Insurance in the Mortgageholders Errors And Omissions Coverage Form; and
> 3. Paragraph F.6.b. Other Insurance in the Standard Property Policy
>
> are replaced by the following:
>
> If there is other insurance covering the same loss or damage, other than that described in the paragraph above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance. But we will not pay more than the applicable Limit of Insurance.

34. The RLL Policy also contains a clause with respect to how to handle and adjust claims in the event that other insurance covers the same loss, which states:

> D. Other Insurance
> 1. You or any "renter" may have other insurance subject to the same or similar plan, terms, conditions, and provisions as the insurance
>
>    provided under this Coverage Form. If you or any "renter" does have other insurance, the insurance provided under this Coverage Form will be primary with respect to any such other insurance, except in the case of an HO4 policy issued in the name of a "renter". In such case, the insurance provided under this Coverage Form will be excess over such other insurance, whether collectible or not.
>
> 2. If there is other insurance covering the same "loss or damage", other than that described in 1. above, we will pay the amount of "loss or damage" for which the "renter" becomes legally obligated to pay, and such other insurance shall pay only for the amount of covered "loss or damage" in excess of the amount due from this Coverage Form.

35.     The Philadelphia Policy is not an HO4 policy, or in other words, a tenant's insurance policy.

36.     Further, the Philadelphia Policy contains the following clause that makes clear that Philadelphia has rights of recovery against others to the extent it makes payments under the Philadelphia Policy:

> **I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**
>
> If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:
>
> 1. Prior to a loss to your Covered Property or Covered Income.
> 2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:
>    a. Someone insured by this insurance;
>    b. A business firm:
>       (1) Owned or controlled by you; or
>       (2) That owns or controls you; or
>    c. Your tenant.
>
> This will not restrict your insurance.

37.     Based on the policies' "Other Insurance" language, the RLL Policy and the Philadelphia Policy necessarily require that the RLL Policy is primary and that the Philadelphia Policy is excess over anything paid by the RLL Policy for the same loss.

38.     Since the RLL payment covered the same first-party property loss as Philadelphia has already paid and/or otherwise must pay going forward, but for the RLL Policy, Philadelphia is entitled to reimbursement or an offset/credit on its obligations to the extent of the RLL payment, which credit/offset Philadelphia may apply at any point in the adjusting process, whether before or after future payments.

39.     Moreover, both the Philadelphia Policy and public policy are breached or will be breached by Defendants if they retain the RLL payment without accepting an offset or credit to Philadelphia's obligations or if they do not reimburse Philadelphia the amount of the RLL

payment, as neither the law nor the insurance policies allow for duplicate insurance for the same loss. Damages of $100,000 caused by the breach would be recoverable by Philadelphia under those circumstances.

40. Philadelphia is also an express, direct, and intended third-party beneficiary of the RLL Policy between Defendants and the RLL insurer, since the RLL Policy confers the separate and distinct benefit on Philadelphia of making Philadelphia's obligations excess over RLL's obligations; therefore Philadelphia is entitled to the proceeds or benefit of the RLL payment, not Defendants.

41. Further, regardless of whether the RLL payment is a first-party or third-party liability payment, Defendants' legal and contractual right of recovery against the RLL Policy insurer Hudson and/or the at-fault renter in connection with the fire is transferred to Philadelphia under the "Transfer of Rights" clause, which entitles Philadelphia to the proceeds of the RLL Policy or to a credit on Philadelphia's own obligations in the amount of the RLL Policy proceeds. Defendants have breached the Philadelphia Policy by impairing Philadelphia's rights against third parties – including Hudson and the at-fault renter – if the RLL proceeds are not kept and preserved for Philadelphia's ultimate credit and benefit, which would result in $100,000 in damages plus interest.

42. By having paid the fire loss, and/or by virtue of the Philadelphia Policy "Transfer of Rights" clause, Philadelphia is also equitably and contractually subrogated to Defendants' rights against the at-fault renter and/or the RLL insurer Hudson, and therefore is subrogated to the recovery of the proceeds of the $100,000 RLL Policy payment.

43. Defendants incorrectly received the RLL payment by mistake or otherwise which unjustly enriched them with funds rightfully owing to Philadelphia, and therefore the RLL payment should be held in constructive trust by Defendants for Philadelphia's benefit and turned over to Philadelphia accordingly.

44. Philadelphia is entitled to declaratory judgment consistent with the foregoing.

## PRAYER FOR RELIEF

WHEREFORE, Philadelphia prays for the following relief:

a. A declaratory judgment that:

    a. The RLL Policy is primary and that the Philadelphia Policy is excess with regard to the April 1, 2019 fire loss at West Point;

    b. That Philadelphia is entitled to a credit on or an offset of its obligations to the extent of the $100,000 RLL payment, which can be applied at any point in the adjusting process (whether before or after future payments).

    c. Philadelphia is entitled to a reimbursement of past or future paid claims in the same amount as the RLL payment.

    d. Defendants are in breach of their obligations under the Philadelphia Policy if they retain the RLL payment without accepting an offset or credit to Philadelphia's obligations, or if they do not reimburse Philadelphia the amount of the RLL payment, and therefore would owe damages to Philadelphia in the amount of $100,000, plus pre and post judgment interest.

    e. Philadelphia is a third-party beneficiary of the RLL Policy and is therefore entitled to the proceeds or benefit of the RLL payment, not Defendants.

    f. Philadelphia is equitably and contractually subrogated to Defendants' rights against others, including the right to the proceeds or benefit of the RLL payment paid by the RLL insurer or at-fault renter.

    g. The RLL payment should be held in constructive trust by Defendants for Philadelphia's benefit and turned over to Philadelphia accordingly.

    h. All other rights of Philadelphia described in the body of this Complaint are affirmed.

b. Costs of suit.

c. Any other relief that the Court deems just and equitable.

DATED this 13th day of November, 2019.

                STRONG & HANNI

                */s/ Byron G. Martin*

                Byron G. Martin
                Axel Trumbo
                *Attorneys for Plaintiff Philadelphia Insurance Companies*